## 33566.  STATE DEPARTMENT OF REVENUE *v.* SNELLING.

DECIDED JUNE 29, 1951.

*Eugene Cook, Attorney-General, H. Grady Simmons, Frank B. Stow, Assistant Attorneys-General,* for plaintiff in error.

*Carlton Mobley,* contra.

SUTTON, C. J.  Mrs. M. L. Snelling, the widow of M. L. Snelling, filed with the State Board of Workmen's Compensation her claim for compensation for the death of her husband, who was employed by the State Department of Revenue at the time of his death.  After a hearing, which was continued to take additional testimony, she was awarded compensation by the hearing director, and, on appeal, the award was affirmed by the Superior

Court of Bibb County.  To this judgment the State Department of Revenue excepted.

It was shown that M. L. Snelling was employed by the State Department of Revenue on April 15, 1949, "for enforcement of the Act known as the 'Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors,'" according to his letter of appointment.  He was assigned to Macon and was there so employed on February 4, 1950.  He did not have regular hours, although it was his custom to report daily to the State liquor warehouse in Macon, except on Saturdays and Sundays, when it was closed.  His duties were to enforce the laws relating to illegal or non-tax-paid liquor and to illegal dealing in tax-paid liquor.  He was engaged chiefly in investigation, running down reports and suspicions.  He received all the reports that came into the State warehouse, talked to numerous friends and contacts during the day, and rode over the city and adjacent territory looking for violations of the liquor law.  He was subject to call at any time.

On February 4, 1950, which was a Saturday and one of his busiest days, Snelling appeared in court as a witness in the morning, and then returned to his house for lunch at about one or two o'clock.  According to the testimony of Charles Turner, himself a former enforcement officer with the State Revenue Department, Snelling came to his liquor store in Macon at 3 p.m. that day and stayed for about half an hour watching a liquor store located across the street, on instructions from the Revenue Department, which had received information that this store was engaged in illegal operations.  Snelling said when he left Turner's place that he was going to watch Abe Wolf's place, as Wolf had been reported to be selling moonshine whisky.

It appeared that Snelling then went to Jones Chicken House, a grocery and hardware store, which was across the street from Abe Wolf's place of business and was a good vantage point from which to watch it.  He found three men in a car parked in front of the chicken store, and Norman Jones, the proprietor of the store, requested Snelling to call the police to get rid of the three men, who, according to Jones and other witnesses, had been drinking and cursing that day in front of the store.  Jones first asked Snelling to do something about it; Snelling said, "I can't

lock them up, but I can go and call the police, and they will lock them up." Snelling also said that he was pretty sure they had some liquor, that he could see about what kind of liquor they had, and that he would check on that. Snelling used the telephone in the store to call the police, and they arrived in about five minutes.

In that interval, it appears that Snelling went to the car in front of the store and put his head into the front window. According to the testimony of Gregory, who was standing outside the car, and of Dorough, who was in the car, Snelling asked, "What is going on?" as he came to the driver's side of the car and pushed Gregory aside.

Dorough replied, "Nothing, why? What do you want?"

"You all are drunk," said Snelling.

"Ain't nobody drunk," said Dorough.

"Well, I am a revenue officer," said Snelling.

Dorough said, "I don't care about you being a revenue officer; I am not violating any liquor laws. What is your business?"

Snelling replied, "Being a revenue officer, I have got business anywhere I want to go. You don't have to ask me about my business." The evidence discloses no more of the conversation, except that one of the employees in the chicken store heard Snelling state that if his health permitted, he would show them what he would do, but he was not physically able. This witness and another employee of the store also testified that one of the occupants of the car pushed Snelling away from the car. The dispute continued until the police came.

Lt. E. B. McGahee, one of the police officers answering Snelling's call, testified that the two remaining occupants of the car, one having left before they got there, had been apparently drinking but that he did not consider them to be drunk, and that neither Jones nor Snelling would prosecute on such charges. The officers did not arrest Dorough or Gregory, although they searched the car at Snelling's request to see if it had any liquor in it.

Gregory testified that Snelling was very excited when he came to the car, as if he were scared to death, and Dorough also testified that Snelling was very excited, that his voice shook, and that he was pale and looked nervous. The employees in the chicken store testified that after the argument and the arrival

of the police, Snelling came into the store, bought a chicken, and then went out to a bench in front of the store, where he sat for about ten or fifteen minutes, pale, exhausted and complaining that he felt sick.

Snelling went home, and his wife called a doctor for him. Shortly thereafter, the doctor was called again as Snelling's condition became worse, and Snelling was taken to a hospital, where he died in the early morning of February 5, 1950.

The affidavit of Dr. J. D. Applewhite was admitted by stipulation, and it was to the effect that he had been called by Mrs. Snelling at about 4:45 p.m. on February 4, 1950; that he went to their home, found Snelling suffering with numbness in his arm and leg, and gave him some medicine; that he was called back to Snelling's home, found him unconscious, and had him admitted to Macon Hospital, where Snelling died at 2:15 a.m. on February 5, 1950, of a cerebral hemorrhage. It was his opinion that the excitement of the argument caused Snelling's blood pressure to run up, and that this resulted in the cerebral hemorrhage which caused his death. He had treated Snelling from October 29, 1948, until his death; the deceased had high blood pressure and was repeatedly advised not to work too hard and not to do anything that would cause him to become excited.

The hearing director found as a matter of fact "that this employee died as a result of cerebral hemorrhage which was precipitated or brought on by the work he was doing and/or the excitement and being pushed while in the due course of his employment; to wit, while engaged in an effort to search an automobile to discover whether or not its occupants possessed or were drinking untaxed or illegal whisky." We think the evidence supported this finding. The contentions of the plaintiff in error, that the deceased was exceeding his authority and acting as a peace officer of the City of Macon at the time he approached the automobile and engaged in an argument with one of the occupants thereof, that he did not perform a single act from the time Jones asked him to do something about the disturbance that was being carried on in front of Jones' place of business that would indicate that he was acting as an enforcement officer of the State Department of Revenue, and that the

argument was not a part of and did not arise out of or in the course of Snelling's employment, are without merit.

It appears from the evidence that the duties of Snelling as a revenue agent were general; that as an enforcement officer of the State Revenue Department he was supposed to observe and look for possible violations of the liquor law at all times; and that on the day in question he had come from one observation point and was going to the Jones Chicken House, where he intended to observe another suspicious location across the street, and when Norman Jones asked him to do something about the men creating a disturbance in front of his place of business, Snelling told him that he could not arrest them for being drunk and disorderly, but when he went to the car and put his head inside of it, he was evidently trying to ascertain what kind of liquor the occupants of the car were drinking, and whether or not it was tax-paid liquor. The dispute between these men and Snelling as to Snelling's authority to be investigating and looking into their car then occurred. Confronted by three men, admittedly drinking, and speaking angrily to him, Snelling could have done little more than he did until the officers arrived. Snelling asked one of the policemen to search the car, and he did so, although nothing was found.

From the facts as disclosed by the evidence, it appears that the argument between the parties was the result of and incidental to the performance of Snelling's duties as an enforcement officer of the State Department of Revenue, and that the excitement caused thereby, which contributed to, brought on and precipitated his death, arose out of and in the course of the deceased's employment.

The cases of *U. S. Fidelity &c. Co.* v. *Green,* 38 *Ga. App.* 50 (142 S. E. 464), and *Liberty Mutual Ins. Co.* v. *Neal,* 55 *Ga. App.* 790 (191 S. E. 393), cited and relied on by the plaintiff in error, do not authorize or require a different ruling from the one here made, under the facts of this case.

The superior court did not err in affirming the award of the State Board of Workmen's Compensation granting compensation to the widow of M. L. Snelling.

*Judgment affirmed. Felton and Worrill, JJ., concur.*